CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 7 2012

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ADRIENNE SEWELL,** | ) | **Civil Action No. 7:11cv00124** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WELLS FARGO BANK, N.A. AND** | ) | |
| **WELLS FARGO & COMPANY** | ) | |
| | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

This is an action under the court's diversity jurisdiction, 28 U.S.C. § 1332, by plaintiff Adrienne Sewell, a former Wells Fargo bank teller, for breach of contract, wrongful termination, and defamation against defendants Wells Fargo, N.A. and Wells Fargo & Company (collectively, "Wells Fargo") arising out of events surrounding Sewell's termination from Wells Fargo. Sewell alleges[1] that Wells Fargo wrongfully terminated her after she refused to sign documents accusing other Wells Fargo employees of manipulating cash totals and falsifying bank records. Sewell claims that by signing the documents she would have violated Virginia law and that Virginia prohibits the firing of an employee for the employee's refusal to break the law. She further claims that Wells Fargo's motive for classifying her termination as an "immediate termination of employment for falsifying records" was to deny her certain benefits to which she would have

---

[1] Sewell has submitted a total of four versions of her complaint. After requesting an extension of time for service, Sewell amended her complaint on July 29th, 2011 and finally served Wells Fargo on August 1st with the second version of the complaint. On September 1st, Wells Fargo responded with a Rule 12(b)(6) motion. One week before the court was to hear oral argument on that motion, Sewell moved to amend her complaint and filed a proposed second amended complaint (the third version of the complaint). The court heard oral argument on the parties' motions on October 26th. At the conclusion of the hearing, the court granted Sewell leave to amend in order to correct various deficiencies in the amended complaint. It is that fourth version of the complaint, filed on November 5, 2011, on which the court bases its opinion.

been entitled had she not been so terminated.  This conduct, Sewell claims, constitutes a breach

of contract.  Sewell finally claims that after she was fired, Wells Fargo defamed her by making it

known to others in the community that she had been fired and that the listener in each instance

contextually inferred that Sewell was fired for issues involving money or honesty.  The matter is

now before the court on Wells Fargo's Rule 12(b)(6) motion to dismiss for failure to state a

claim.  Because Sewell has pled facts sufficient to show facially plausible claims for breach of

contract and defamation, the court denies Wells Fargo's motion as to those claims.  Sewell has

failed, however, to state a claim for wrongful termination and the court therefore dismisses that

claim.

## I.

Wachovia Bank (now Wells Fargo[2]) hired Sewell in 2005.  As a perk of employment, the

bank offered various employment benefits, both during the term of employment and after its end,

which were explained in an employee handbook and a "benefits book."  After several years of

good performance, the bank promoted Sewell to a supervisory position in which she managed

seven employees.  Only a few months later, in March of 2010, the bank's fraud prevention

officer approached Sewell and accused her of "manipulating cash totals" and "falsifying bank

records."  On the same day, Wells Fargo leveled the same charges against the tellers working

under Sewell's supervision.  According to Sewell, those charges stemmed from the tellers'

practice of exchanging bills with one another in order to replenish certain denominations in their

cash drawers.  Wells Fargo asked Sewell to sign documents certifying that her supervisees had

submitted false bank records.  Believing that the records in question were "true and correct" and

that none of the employees under her supervision had submitted false records, Sewell refused to

---

[2] Wells Fargo acquired Wachovia bank on December 31, 2008.

2

comply with the bank's request. Four days later, Wells Fargo terminated her for "falsifying records and/or manipulating cash totals."

Soon after the firing, several Wells Fargo employees told members of the community about the incident. According to Sewell, one Wells Fargo teller told a drive-through customer that Sewell was fired for "not following procedure" and told several local teachers that Sewell was fired "because of money." Sewell alleges that another teller told customers that Sewell "had been terminated" and "was fired for cause," and that a branch manager told a customer that Sewell was "let go to make changes." In each of these instances, Sewell claims, the listener inferred that Wells Fargo had fired Sewell for issues regarding money or honesty.

Sewell claims that Wells Fargo's true motivation for firing her was to justify denying her certain benefits and to reduce payroll expenditures. In pursuing that objective, she claims, Wells Fargo breached its contract with her, wrongfully terminated her, and defamed her.

## II.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In evaluating a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). While the court must accept the claimant's factual allegations as true, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Rather, plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and if the claim is not "plausible on its face" it must be dismissed. Bell Atl. Corp. v. Twombly,

3

550 U.S. 544, 570 (2007). "Asking for plausible grounds to infer" a claim's existence "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. Id. at 556. While Twombly and Iqbal may have heralded a change in pleading dynamics, "the law has not transmuted the 12(b)(6) procedural device into summary judgment. So long as a complaint establishes a plausible legal and factual basis for each of the claims contained therein, the claims will stand." Parker v. D.R. Kincaid Chair Co., No. 5:10cv97-V, 2011 WL 3347905, at *1 (W.D.N.C. August 2, 2011). With those precepts in mind, the court concludes that Sewell has pled adequately that Wells Fargo breached a contract for promised benefits and that it defamed her when bank employees made certain statements to bank customers during business hours. Sewell has failed, however, to state a claim for wrongful termination.

### A. Breach of Contract

Sewell claims that Wells Fargo promised certain benefits and that by terminating her employment on the grounds on which it did—for manipulating cash totals and falsifying bank records—Wells Fargo was able to avoid providing those benefits. Thus, Sewell claims, Wells Fargo breached their contract. Wells Fargo has moved to dismiss this claim on the ground that Sewell has not alleged facts showing an enforceable agreement. The court disagrees. Because Sewell has pled facts showing a plausible breach of contract, the court denies Wells Fargo's motion to dismiss the contract claim.

There are three elements of a breach of contract action in Virginia: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. Filak v. George, 267 Va. 612, 614 (2004). The Virginia Supreme Court has held that an employee may

4

accept an employer's promise of benefits by merely continuing to work for the employer and that such promises are enforceable and non-gratuitous because the provision of "so-called 'fringe benefits' tends to better employee morale, improve performance and lessen turnover, all to the distinct advantage of the employer." Dulany Foods, Inc. v. Ayers, 220 Va. 502, 510, 513 (1979).

Here, Sewell alleges facts plausibly showing that Wells Fargo promised Sewell various benefits (including compensation for accrued paid time off and the right to pay preferential post-termination rates on health insurance), that Sewell worked for Wells Fargo for approximately five years, that Wells Fargo intentionally classified her termination in such a way as to avoid paying those benefits, and that she has been injured by that conduct. As alleged, those facts are sufficient to state a plausible claim for breach of contract.

Wells Fargo argues that the first breach-of-contract element, a legally enforceable obligation, is not present here because Wells Fargo's employee handbook, which explains employee benefits, plainly states that it is not a contract. Indeed, Virginia law recognizes this sort of disclaimer. See Shiflett v. GE Fanuc Automation Corp., Civ. A. No. 95-0073-C, 1996 WL 481082, at *4 (W.D. Va. July 23, 1996) ("Virginia law . . . usually respects disclaimers that disavow any intent to be contractually bound to the policies stated in the handbook."). The disclaimer to which Wells Fargo refers states: "[This handbook] is meant as an outline of policies and procedures[;] it is not contract of employee 'rights.'"[3] In addition, Sewell signed a

---

[3] "In general, material extrinsic to the complaint may not be considered on a Rule 12(b)(6) motion to dismiss without converting it to a Rule 56 motion for summary judgment, but there are certain exceptions this rule. . . . 'The complaint is deemed to include any written instrument . . . incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'" Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 757 (W.D. Va. 2007) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). Throughout her complaint, Sewell references and relies upon the handbook and quotes the acknowledgment she signed. The court may therefore consider these documents without converting Wells Fargo's motion to dismiss into a motion for summary judgment.

form acknowledging that disclaimer.  The form states, "I have been provided the link to access the online Wells Fargo Team Member Handbook.  I understand that the policies it contains do not constitute an express or implied contract of employment, and that my employment is at will."

Although Sewell's complaint repeatedly references the handbook, her claim is not grounded exclusively on its contents.  Rather, Sewell's complaint alleges that her termination "was contrary to both the express terms of the handbook *and the promise made to her by Wells Fargo* regarding the type and extent of benefits that she would be eligible for upon termination." (Compl. ¶ 56, ECF No. 25) (emphasis added).  Sewell also alleges the existence of a "benefits book" describing various employee benefits and how different types of termination affect those benefits—the existence of which Wells Fargo does not dispute or even address in its motion to dismiss.  Because the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff, and because the court does not take Sewell's contract claim to rely exclusively on the employee handbook, the court denies Wells Fargo's motion to dismiss this claim.

## B. Wrongful Termination

Sewell claims that Wells Fargo is liable for wrongful termination because it fired her after she refused sign documents certifying that her supervisees had falsified bank records. Wells Fargo responds that Virginia is an at-will employment state and that Sewell has failed to identify any crime that would have resulted from her signing the alleged documents.  The court agrees with Wells Fargo and dismisses Sewell's wrongful termination claim.

Virginia has long adhered firmly to the doctrine of at-will employment.  Lockhart v. Commonwealth Educ. Sys., 247 Va. 98, 102 (1994).  Under that doctrine, at-will employment in Virginia is terminable at any time for any reason, or for no reason at all.  Id. ("An employee is

6

ordinarily at liberty to leave his employment for any reason . . . without incurring liability to his employer.  Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer.").

The Virginia Supreme Court has carved out an exception to this rule: an at-will employee may bring a "Bowman claim" for wrongful termination if the discharge violates Virginia public policy as expressed in a state statute.  See Bowman v. State Bank of Keysville, 229 Va. 534, 540 (1985).  The exception to Virginia's employment-at-will doctrine is, however, narrowly cabined to three situations: (1) an employer violation of a policy enabling the exercise of an employee's statutorily created right[4]; (2) an employer violation of a policy when the policy is expressly stated in a statute and the employee is clearly a member of the class entitled to the protection of that policy[5]; and (3) discharge based on the employee's refusal to engage in a criminal act. Rowan v. Tractor Supply Co., 263 Va. 209, 213–14 (2002).  The Virginia Supreme court recognizes the third category because "the protection of the general public from lawless acts is an unquestioned policy underlying [criminal] statutes" and "allowing the employment-at-will doctrine to 'serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity' would violate this most compelling public policy." Id. at 214 (quoting Mitchem v. Counts, 259 Va. 179, 190 (2000)).  It is this category on which Sewell bases her Bowman claim.

---

[4] An example of this situation is when an employer fires an employee for the employee's refusal to vote stock in a manner directed by the employer when a state statute gives shareholders the right to vote their own shares. See Rowan, 263 Va. at 710–711.

[5] An example of this situation is when an employer fires an employee based on gender and a state statute provides that "it is 'the policy of the Commonwealth' to 'safeguard all individuals within this Commonwealth' against unlawful discrimination in employment based on gender."  Rowan, 263 Va. at 214.

Sewell claims that she would have violated any of three federal code provisions—12 U.S.C § 1817, 18 U.S.C. § 1005, and 18 U.S.C § 1344—by obeying the bank's order to sign documents accusing her supervisees of wrongdoing. The point, however, is immaterial because Bowman claims may be grounded only on state law. See Storey v. Patient First Corp., 207 F. Supp. 2d 431, 450 (E.D. Va. 2002) ("It is worth emphasizing that a claim under Bowman 'must find root in a *state* statute [ ]'; it cannot have its genesis in an act of Congress.") (alteration in original).

Sewell also plucks several provisions from the Virginia Code. Two of those code provisions, § 18.2-95 (prohibiting grand larceny) and § 18.2-111 (prohibiting embezzlement) are no more helpful than the federal provisions because they proscribe conduct not remotely at issue here. There is no plausible scenario in which Sewell could have signed Wells Fargo's documents and later been found guilty of either grand larceny or embezzlement. As such, Sewell cannot ground her Bowman claim on either of these provisions.

The final code provision Sewell has cited in support of her Bowman claim is Virginia Code § 6.2-943(B), and that code provision applies only if the court construes it quite broadly. Virginia code §6.2-943(B) provides that:

> Any . . . employee of any bank who . . . makes any false entry in any book, report, or statement of such bank, with intent in any case to injure or defraud the bank or any other individual or entity, or to deceive any officer of the bank or the Commission, or any agent or examiner authorized to examine the affairs of the bank, and any person, who, with the same intent, aids or abets any such officer, director, agent, or employee of such bank . . . is guilty of a Class 5 felony.

"When construing criminal statutes, 'a court must not add to the words of the statute, nor ignore its actual words, and must strictly construe the statute and limit its application to cases falling clearly within its scope.'" Phelps v. Commonwealth of Va., 275 Va. 139, 142 (2008)

(quoting Robinson v. Commonwealth of Va., 212 Va. 848, 850 (1972)).  Reading § 6.2-943 through that lens reveals that it prohibits, among other conduct not here pertinent, bank employees from making false entries in bank books, reports, and statements with the intent to injure or defraud the bank or any other individual or entity.  Nothing in Sewell's pleadings indicates that the bank asked her to make a false entry in a bank book, report, or statement.  Rather, the bank merely asked her to sign documents attesting that her supervisees had falsified bank records.  Because she has failed to plausibly allege that Wells Fargo sought to force her, "under the threat of discharge, to engage in criminal activity," the court grants Wells Fargo's motion to dismiss Sewell's wrongful termination claim.[6]

### C.  Defamation

Sewell alleges that in the wake of her termination Wells Fargo employees acting within the scope of their employment made several defamatory statements about her.  Wells Fargo makes three arguments in support of its motion to dismiss: (1) the alleged statements are not defamatory as a matter of law, (2) Sewell offers no facts to support her claim that anyone hearing the alleged statements understood the statements to mean that Sewell had been fired for problems with money or honesty, and (3) the alleged statements were not made within the scope of employment.  The court disagrees with Wells Fargo on all three fronts and finds that Sewell's complaint alleges sufficient facts to state a claim for defamation.

Under Virginia law, an individual suing for defamation must show that the defendant published a false, factual statement concerning and harming the plaintiff or the plaintiff's

---

[6] Sewell goes on at length in her complaint regarding the Federal Deposit Insurance Act, the Federal Reserve Act, Wells Fargo's status as an insured financial institution, the Federal Financial Institutions Examination Council, and various recording and reporting requirements required by state and federal law.  To whatever extent that Sewell means to underpin her Bowman claim with a discussion of these matters, the court finds that the attempt is frivolous and will not address it further.

reputation.  Hyland v. Raytheon Tech. Servs. Co., 277 Va. 40, 46 (2009).  The plaintiff must show either that the defendant knew the statement to be false, unreasonably believed it to be true, or negligently failed to determine the facts underlying the statement.  Id.  Defamatory words that prejudice a person in his or her profession are actionable as defamation per se.  Id.  A defamatory statement need not be made in direct terms if, when considering the statement "as a whole, including any implications, inferences, or insinuations that reasonably could be drawn from the statement," it carries a defamatory message.  Id. at 48.  "[I]t matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory."  Carwile v. Richmond Newspapers, 196 Va. 1, 7 (1954).

Wells Fargo first argues that the statements were not defamatory as a matter of law, and it points to a Virginia Circuit Court case, Hutchins v. Institutional Commc'ns Co., Case No. (Law) 94634, 1990 Va. Cir. LEXIS 38 (Va. Cir. Ct. April 11, 1990), in which the court held that an employer's statement that it had fired an employee "for cause" was subject to several interpretations, some entirely unoffensive, and that the statement was therefore not defamatory. That court, however, did not address the long line of Virginia cases holding that defamatory statements can made be made by inference, implication, or insinuation.  In light of her allegations that various listeners inferred from context that problems with money or honesty underpinned the firing, the court cannot conclude as a matter of law that the statements were not defamatory.

Second, Wells Fargo argues that Sewell has provided insufficient factual support for her allegations regarding listeners' defamatory inferences.  While it is true that Sewell's complaint does not detail the precise reasons listeners drew defamatory inferences, Wells Fargo's argument

10

places too great a burden on Rule 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."

Third, and finally, Wells Fargo argues that it cannot be held liable for the statements because they were made outside the scope of employment such that it is not liable under a theory of respondeat superior.  Wells Fargo underscores the complaint's acknowledgement that bank policy prohibited discussion of Sewell's termination, and that at least one employee knew about the policy because she said, "*I am not supposed to tell you* but everyone except for me and Carly were fired for not following procedure."  (Compl. ¶¶ 26, 31, ECF No. 25) (emphasis added).  Wells Fargo argues that "[t]he normal functions of a teller may include things like accepting checks for deposit, cashing checks and facilitating the withdrawal of funds, but, just as clearly, they do <u>not</u> include gossiping about matters the teller has been explicitly warned not to discuss." (Def. Memo. Supp. Mot. Dismiss 14, ECF No. 27) (citation omitted).

> Virginia law holds that an act is within the scope of the employment if
>
> (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business.

<u>Kensington Assocs. v. West</u>, 234 Va. 430, 432 (1987).  As such, the issue is most often fact-laden.  <u>See, e.g.</u>, <u>Williams v. Autozone Stores, Inc.</u>, No. 3:09-cv-255, 2009 WL 3837281 (E.D. Va. Nov. 13, 2009) ("Where scope of employment questions are fairly contested, the courts of Virginia treat them as issues of fact best left to the jury.").

The essence of Wells Fargo's argument is that the bank warned its employees that it should not talk about Sewell's firing and therefore any statements by employees on this topic fell outside the scope of employment.  There is little doubt that employers commonly warn

11

employees not to get in car accidents, assault others, or trespass while on the job, but such warnings do not foreclose respondeat superior liability for employee conduct contravening those warnings. Rather, warnings and policies are but one factor to consider in deciding the fact-laden scope-of-employment question.

Sewell has alleged facts sufficient to nudge her defamation claim across the line from conceivable to plausible. In short, Sewell alleges that bank employees made several false,[7] factual statements (as opposed to statements based on opinion) that concerned and harmed her or her reputation to bank customers and members of the community. Because context and circumstance can bundle a defamatory message with an otherwise harmless statement, and because that is what Sewell is claiming here, the court denies Wells Fargo's motion to dismiss Sewell's defamation claim.

### III.

Accepting all well-pleaded facts as true and viewing them in the light most favorable to Sewell, the court finds that the plaintiff has adequately pled claims for breach of contract and defamation. Requiring additional factual detail would exceed the pleading standards established by Twombly and Iqbal. Accordingly, the court denies Wells Fargo's motion to dismiss those claims. Sewell has failed, however, to adequately plead a cause of action for wrongful termination, and the court therefore grants Wells Fargo's motion to dismiss that claim.

**ENTER**: This 27th day of January, 2012.

_____
UNITED STATES DISTRICT JUDGE

---

[7] Sewell maintains that the "cause" for which she was fired was falsifying bank records and that she never did such a thing. It is worth noting here that Sewell's counsel stated during oral argument that Sewell would voluntarily dismiss this lawsuit should Wells Fargo produce proof of falsified bank records.